IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

DRAKE M. WARD, et al.,                    )          No. CV-F-04-6276 REC/DLB
                                          )
                                          )          ORDER GRANTING IN PART AND
                                          )          DENYING IN PART DEFENDANTS'
               Plaintiff,                 )          MOTIONS TO DISMISS AND
                                          )          DIRECTING PLAINTIFFS TO FILE
     vs.                                  )          SECOND AMENDED COMPLAINT
                                          )          WITHIN 30 DAYS OF THE FILING
                                          )          DATE OF THIS ORDER
MACK WIMBISH, et al.,                     )
                                          )
                                          )
               Defendant.                 )
                                          )
_____)

     On April 18, 2005, the court heard the four motions to

dismiss filed by (1) defendants Judge John I. Quinlen, Judge

Catherine D. Purcell, Sherrie Leonard, and Susan Hogue (Yeargan);

(2) defendants Judge Kenneth C. Twisselmann III and Judge Frank

A. Hoover; (3) defendant Bill Lockyer; and (4) defendants Mack

Wimbish, Mark Arnold, Edward Jagels, David Boyd, Sam Smith, John

Nobles, James Newell, Pamela Belmore, Perry Patterson, Patrick

Glennon, Jason Belasis, and the County of Kern.  No written

opposition to these motions to dismiss were filed by plaintiffs,

who are proceeding in pro per.  Plaintiff Drake M. Ward appeared

1

1  at oral argument.

2     On May 2, 2005, the court heard defendant Bryan Hefner's

3  motion to dismiss.  No written opposition to the motion was filed

4  by plaintiffs and neither plaintiff appeared at oral argument.

5     A.  <u>Background</u>.

6     On September 17, 2004, Drake D. Ward "an individual, and as

7  next friend to; JENNEVIE M. SANCHEZ, an individual" filed a

8  Complaint against a number of defendants in their official and

9  individual capacities.  The Complaint was 41 pages long and

10  contained 260 paragraphs.  Defendants Judges Quinlen and Purcell

11  and Leonard and Yeargan filed a motion to dismiss the Complaint

12  as did defendants Mack Wimbish, Mark Arnold, Edward Jagels, David

13  Boyd, Sam Smith, John Nobles, James Newell, Pamela Belmore, Perry

14  Patterson, Patrick Glennon, and County of Kern.   However, before

15  those motions could be heard, plaintiffs filed a First Amended

16  Complaint as of right pursuant to Rule 15(a), Federal Rules of

17  Civil Procedure.

18     The First Amended Complaint (FAC) is 51 pages long and

19  contains 351 paragraphs.  The FAC alleges:[1]

20          1.  This is a civil action pursuant to 42
             U.S.C. §§ 1983, 1985, 1986 and 1988 for

21          damages by a common law husband and wife
             against various law enforcement and court

22

23      [1]The allegations of the FAC imply that the conspiracy arose in
    part to retaliate against or to deter Ward from testifying in a

24  civil action filed by Dorothy Barnes in federal court.  The court
    has reviewed electronically the dockets of the United States

25  District Courts in the Northern, Eastern, Central and Southern
    Districts of California and can find no reference to any action

26  filed by Dorothy Barnes.

officials arising from the husband having
been criminally charged on 3 occasions with
various crimes including spousal abuse
against his handicapped wife.  Plaintiffs
allege Defendants deprived them of liberty
and property without due process of law by
means of an on going conspiracy and malicious
prosecution to retaliate against the husband
for testifying against two defendant officers
in a criminal hearing, and to deter him from
freely testifying in federal court against
those officers.  In furtherance of the
conspiracy, Plaintiffs allege that after they
filed the original complaint, named
defendants deprived them of liberty without
due process of law by the use of force and
false charges against Plaintiffs in an
attempt to coerce them to drop the said
complaint, and to deter Plaintiffs from
testifying against the original defendants in
federal court in violation of the First,
Fourth, Fifth, Sixth, Eighth, and Fourteenth
Amendments to the United States Constitution.

2.  Plaintiff(s) further allege the County of
Kern and its supervisors described herein,
are liable for: (1) a pattern or practice of
unconstitutional false arrests, false
reports, and illegal searches and seizures by
Kern County Sheriff's Department (KCSD)
officers, (2) a pattern or practice of
unconstitutional malicious prosecutions by
Kern County District Attorney (KCDA) public
prosecutors, and (3) a pattern or practice of
unconstitutional inadequate representations
by Kern County Public Defender (KCPD) defense
attorneys, all under color of state law in
violation of the First, Fourth, Fifth, Sixth,
Eighth, and Fourteenth Amendments to the
United States Constitution.

Named as defendants in both their official and individual

capacities are:

     Kern County Sheriff Mack Wimbish;

     Kern County Public Defender Mark A. Arnold;

     Kern County District Attorney Edward R. Jagels; and

1      California Attorney General Bill Lockyer.

2 Named as defendants in their individual capacities are:

3      John I. Quinlen, Judge of the Kern County Superior Court;

4      Catherine D. Purcell, Judge of the Kern County Superior

5 Court;

6      David Boyd, Sam Smith, John Nobles, James Newell, and Pamela

7 Belmore, and Jason Belasis, Kern County Sheriff's Department

8 deputies;

9      Perry Patterson, Deputy District Attorney;

10      Patrick Glennon, Deputy Public Defender;

11      Sherrie Leonard and Susan Yeargan, deputy clerks of the Kern

12 County Superior Court Clerk's Office;

13      Officer Brian Hefner of the California Highway Patrol;

14      County of Kern.

15      Judge Kenneth C. Twisselmann II, presiding Judge of the Kern

16 County Superior Court; and

17      Judge Frank A. Hoover, judge of the Kern County Superior

18 Court.

19 The FAC also names as Does 1-99.

20      The FAC alleges in confusing order various actions and

21 inactions arising from the arrest and prosecution of Ward in four

22 separate criminal actions.

23      The first of these criminal actions, either DA Case No.: COM

24 0504780 or Superior Court Case No. KM015073A, involves Ward's

25 arrest in September 2003 and prosecution for being under the

26 influence of a CNS stimulant in violation of California Health &

4

Safety Code § 11550(a) and inflicting a corporal injury on

Jennevie Sanchez in violation of California Penal Code § 273.5.

Ward was arrested by defendants Boyd, Smith and Nobles.  The

prosecutor was defendant Patterson.  Ward's attorney was

defendant Glennon.  The case was tried by defendant Quinlen.

Ward was found guilty of the violation of Section 273.5 but

acquitted on the charge of violation of Section 11550(a).

Following his conviction, Ward, attempting to act in pro per,

filed a motion for new trial, which was set to be heard before

Judge Purcell.  Judge Purcell continued Ward's motion for new

trial and set it for hearing before Judge Quinlen.  That motion

was withdrawn by defendant Glennon and a new motion for new trial

was filed by Glennon.  The motion for new trial was denied.  It

is not clear from the Complaint what sentence was imposed on

Ward.  A notice of appeal was filed.

    The second criminal action alleged in the FAC involved

Ward's arrest in January 2004 by Kern County Sheriff's Deputy

Newell, after Ward had been stopped by CHP Officer Hefner, for

being under the influence of a CNS stimulant in violation of

Section 11550(a) and his subsequent prosecution.  No Superior

Court case number is alleged in the FAC.  Ward alleges that he

pleaded no contest to this charge on February 25, 2004 and is

appealing the motion denying his motion to withdraw that plea.[2]

---

[2]Defendants have requested that the court take judicial notice
of certified copies of the docket in People v. Ward, Case No.
KF002758A.  The certified copy of the docket states that Ward
was arrested on December 3, 2004 and pleaded guilty to a violation

1    The third criminal action involves Ward's arrest on April 7,
2  2004 by Kern County Sheriff's Deputies Newell and Belmore for
3  possession of drug paraphernalia in violation of Health & Safety
4  Code § 11364.  The Complaint alleges that this charge was
5  dismissed by the court on July 2, 2004.

6    The fourth criminal action involves Ward's arrest on
7  December 3, 2004 and subsequent charge of violation of Health &
8  Safety Code § 11550(a) and for violation of Penal Code § 148(a).
9  It appears from the FAC that those charges are still pending.

10    The FAC alleges both causes of action and counts.  The First
11  Cause of Action also alleges Overt Acts One through Five.  The
12  Second Cause of Action alleges Overt Act Six.  The Third Cause of
13  Action alleges Overt Act Seven.  The Fourth Cause of Action
14  alleges Overt Act Eight.  The Counts alleged in the FAC are as
15  follows:

16         1.  <u>Count One</u> for violation
           of § 1983 "illegal entry and search" by
17

18  of Health and Safety Code § 11377(a) on December 8, 2004.  Because
   the dates of Ward's arrest and no contest plea alleged in the FAC
19  are different from those set forth on this docket sheet and no
   Superior Court case number is alleged, it is unclear whether the
20  parties are referring to the same criminal action.  While the court
   need not accept as true allegations that contradict matters that
21  are properly subject to judicial notice, <u>see</u> <u>Sprewell v. Golden</u>
   <u>State Warriors</u>, 266 F.3d 979, 988, <u>amended</u>, 275 F.3d 1187 (9th Cir.
22  2001), the court cannot determine at this juncture whether the
   certified copies involve the same criminal action alleged in the
23  FAC.  Therefore, the court does not take judicial notice of these
   certified copies at this juncture.  However, the court will require
24  plaintiffs to allege the specific Superior Court case numbers of
   the criminal proceedings against them at issue in this action in
25  the Second Amended Complaint, to the extent that such criminal
   actions remain relevant after taking into consideration the various
26  rulings herein.

plaintiffs Ward and Sanchez against defendants Boyd, Smith and Nobles arising out of the search of plaintiffs' residence on September 18, 2003;

2. <u>Count Two</u> for violation of § 1983 "false arrest and imprisonment" by plaintiff Ward against defendants Boyd, Smith, Nobles, Wimbish and the County of Kern arising out of Ward's arrest on September 18, 2003 and subsequent conviction;

3. <u>Count Three</u> for violation of § 1983 "inadequate representation" by plaintiff Ward against defendants Glennon, Arnold and the County of Kern arising out of Glennon's representation of Ward in the criminal proceedings;

4. <u>Count Four</u> for violation of § 1983 "malicious prosecution" by plaintiff Ward against defendants Patterson, Jagels and the County of Kern;

5. <u>Count Five</u> for violation of § 1983 "false arrest, and illegal search and seizure" by plaintiff Ward against defendants Newell, Patterson, Quinlen, Everett, and the County of Kern arising out of Ward's arrest in January 2004;

6. <u>Count Six</u> for violation of § 1983 by Ward against defendants Quinlen and Purcell for denial of right to a fair hearing;

7. <u>Count Seven</u> for violation of § 1983 "to have the freedom to redress the court of grievances" by plaintiffs Ward and Sanchez against defendants Glennon, Arnold and the County of Kern;

8. <u>Count Eight</u> for violation of § 1985(2) "conspiracy to interfere with federal witness's right to testify" by plaintiff Ward against all defendants;

9. <u>Count Nine</u> for violation of § 1986 "failure to prevent conspiracy" by plaintiff Ward against defendants John Does Five through Nine;

10.  <u>Count Ten</u> for violation of Section 1983
by plaintiffs Ward and Sanchez against
defendants Newell and Belmore for illegal
entry and search arising from the search of
their trailer on April 7, 2004;

11.  <u>Count Eleven</u> for violation of Section
1983 by plaintiffs Ward and Sanchez against
defendants Newell and Belasis for illegal
search and seizure on December 3, 2004;

12.  <u>Count Twelve</u> for violation of Section
1983 by plaintiffs Ward and Sanchez against
defendants Lockyer, Wimbish, Jagels, and the
County of Kern for denial of due process.

The FAC prays for compensatory damages of $ 1 million,
punitive damages of $ 1 million, and reasonable attorneys' fees
pursuant to 42 U.S.C. § 1988.[3]  In addition, the FAC seeks
compensatory damages of $1 million for "municipal liability" and
the following relief against Attorney General Lockyer and Kern
County:

1.  A declaratory judgment that the policies,
practices, and acts complained of herein is
[sic] illegal and unconstitutional.

2.  A permanent injunction enjoining said
defendants from engaging in the practice of
unlawful search of Kern County citizens homes
by misrepresentation to gain permission from
an otherwise opposing party.

3.  A declaratory judgment that the practice
of false arrest and imprisonment of [sic]
where probable cause does not exist and is
based upon an opinion of the defendants is
illegal and unconstitutional.

4.  A permanent injunction enjoining said
defendants from engaging in the practice of

---

[3]Because plaintiffs are proceeding <u>in pro per</u>, they are not
entitled to an award of attorneys' fees pursuant to Section 1988.
<u>Kay v. Ehrler</u>, 499 U.S. 432 (1991).

8

1
2
                        false arrest and imprisonment where probable
cause does not exist and is based upon an
opinion of the defendants.

3   The moving defendants seek dismissal of the FAC pursuant to

4   Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to

5   state a claim upon which relief can be granted.

6       A.   <u>Governing Standards</u>.

7       Rule 8(a)(2), Federal Rules of Civil Procedure, requires

8   that a pleading set forth a short and plain statement of the

9   claim showing that the pleader is entitled to relief.   Under Rule

10  8(a)(2), a pleading must give fair notice and state the elements

11  of the claim plainly and succinctly.   <u>Jones v. Community</u>

12  <u>Redevelopment Agency</u>, 733 F.2d 646, 649 (9th Cir. 1984).   A

13  complaint that is verbose, conclusory and confusing does not

14  comply with Rule 8(a)(2).   <u>Nevijel v. North Coast Life Ins. Co.</u>,

15  651 F.2d 671, 674 (9th Cir. 1981).   However, before a district

16  court's dismissal of a complaint without leave to amend will be

17  affirmed, the district court must have first adopted less drastic

18  alternatives, such as advising plaintiff of the deficiencies in

19  the pleading and giving leave to amend to correct them.   <u>Id</u>.

20  Furthermore, the court must construe a <u>pro se</u> plaintiff's

21  pleadings liberally in determining whether a claim has been

22  stated.   <u>Ortez v.  Washington County, State of Or.</u>, 88 F.3d 804,

23  807 (9th Cir. 1996); <u>Eldridge v. Block</u>, 832 F.Supp. 1132, 1137

24  (9th Cir. 1987).   In addition, "in apprising the sufficiency of

25  the complaint we follow ... the accepted rule that a complaint

26  should not be dismissed for failure to state a claim unless it

9

1 appears beyond doubt that the plaintiff can prove no set of facts

2 in support of his claim which would entitle him to relief."

3 <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

4     B.  <u>Failure to Comply with Rule 8(a)(2)</u>.

5     All defendants move to dismiss the FAC because of the

6 failure to comply with Rule 8(a)(2).

7     Defendants' motions on this ground are well-taken.  As noted

8 <u>supra</u>, the FAC is extremely lengthy and very confusingly pleaded.

9 The FAC combines counts, overt acts, and causes of action, making

10 it difficult to determine which allegations apply to which

11 defendant.  Because of the number of criminal prosecutions, the

12 absence of Superior Court case numbers makes it difficult to

13 follow the allegations pertaining to the specific criminal

14 proceedings at issue.  The FAC is unclear about which claims are

15 being made by which plaintiff.  The FAC includes alleged

16 quotations of comments made by various defendants and unnecessary

17 adjectives and descriptive commentary.  Paragraphs 25-27 allege

18 events predating the gravamen of the FAC which have no bearing

19 upon the statement of a claim against any of the defendants.  To

20 the extent that various causes of action and defendants are not

21 otherwise dismissed from this action with prejudice, <u>see</u>

22 <u>discussion infra</u>, plaintiffs will be required to comply with Rule

23 8(a)(2) when filing the Second Amended Complaint, taking into

24 account the court's rulings herein and the requirements of Rule

25 8(a)(2) set forth above.

26     C.  <u>Motion to Dismiss by Defendants Judges Quinlen and</u>

Purcell and Defendants Leonard and Yeargan; Motion to Dismiss by Defendants Judge Kenneth C. Twisselmann III and Judge Frank A. Hoover.

These defendants move to dismiss the FAC on several grounds, each of which is discussed under separate heading.[4]

### 1. Judicial Immunity.

Judges are absolutely immune from civil liability for damages in their judicial acts. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Stump v. Sparkman, 435 U.S. 349, 356-357 (1978). A clear absence of all jurisdiction means a clear lack of subject matter jurisdiction. See Mullins v. U.S. Bankruptcy Court, Dist. of Nevada, 828 F.2d 1385, 1389 (9th Cir. 1987), cert. denied, 486 U.S. 1040 (1988). Judicial immunity is not lost by allegations that a judge conspired with a third party. As long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction, immunity applies. Ashelman v. Pope, 793 F.2d 1072, 1078 (9th Cir. 1986). However, judicial immunity for state judges does not extend to a claim for prospective injunctive or declaratory relief. See

_____

[4]The moving defendants seek dismissal on the ground that they are not "persons" within the meaning of Section 1983. However, because the FAC alleges that plaintiffs are suing these defendants in their individual capacities only, this ground for dismissal is moot.

1    <u>Pulliam v. Allen</u>, 466 U.S. 522, 541-542 (1984).[5]

2      All of the allegations in the FAC against Judges Quinlen and

3 Purcell are based on judicial actions taken by them in the course

4 of presiding over criminal proceedings against Drake Ward and/or

5 Jennevie Sanchez or presiding over civil actions the rulings in

6 which are alleged by Drake Ward to have had an effect on the

7 criminal prosecutions against him.  All of the allegations in the

8 FAC against Judges Twisselmann and Hoover are based on judicial

9 actions taken by them with respect to various motions and/or

10 writs filed in connection with the criminal proceedings against

11 Ward.

12      Therefore, to the extent that this action seeks monetary

13 damages against defendants John I. Quinlen, Catherine D. Purcell,

14 Kenneth C. Twisselmann III, and Frank A. Hoover, this action is

15 dismissed with prejudice and without leave to amend on the basis

16 of absolute judicial immunity.

17          2.   <u>Quasi-Judicial Immunity</u>.

18      Named as defendants in their individual capacities are two

19 clerks of the Kern County Superior Court.

20      Court clerks have absolute quasi-judicial immunity from

21 damages for civil rights violations when they perform tasks that

22 are an integral part of the judicial process.  <u>See</u> <u>Morrison v.</u>

23

24        [5]The case upon which defendants rely in asserting that they are entitled to judicial immunity from liability for injunctive or declaratory relief applies to federal judges only.  <u>See</u> <u>Moore v.</u>

25 <u>Brewster</u>, 98 F.3d 1240, 1243-1244 (9th Cir. 1996), <u>cert. denied</u>, 519 U.S. 1118 (1997).

26

Jones, 607 F.2d 1269, 1273 (9th Cir. 1979), cert. denied, 445 U.S. 962 (1980); Shipp v. Todd, 568 F.2d 133, 134 (9th Cir. 1978).

Here, the only allegation in the FAC against defendant Yeargan is that she omitted "from her official reports the objections made by Mr. Ward [to Judge Quinlen hearing a criminal matter against him]" and that she falsely certified that defendant had stated that there was no legal cause why judgment should not be pronounced against Ward.  The only allegations against defendant Leonard are that he returned two notices of appeal attempted to be filed by Ward with a letter stating that there is no notice of appeal from a plea of no contest or not guilty without a certificate of probable cause and that defendant Leonard refused to process the notices of appeal after Ward submitted them with a "Notice to the Clerk of Error and Good Cause to Continue Appeal".

Because these allegations involve tasks that are an integral part of the judicial process, the court dismisses the causes of action against defendants Sherrie Leonard and Susan Hogue (Yeargan) with prejudice and without leave to amend on the ground of absolute quasi-judicial immunity to the extent that the FAC seeks damages against these defendants.

      3.  Rooker-Feldman Doctrine; Application of Heck v. Humphrey.

Defendants also move to dismiss the allegations of the FAC which allege that the judges committed error in making various

13

rulings in the criminal proceedings against Drake Ward pursuant

to the <u>Rooker-Feldman</u> doctrine and pursuant to <u>Heck v. Humphrey</u>.

a.   <u>Rooker-Feldman</u> Doctrine.

As explained in <u>Branson v. Nott</u>, 62 F.3d 287, 291-292 (9th

Cir. 1995):

> As courts of original jurisdiction, federal
> district courts have not authority to review
> the final determinations of a state court in
> judicial proceedings ... This is true even
> when the challenge to a state court decision
> involves federal constitutional issues ....

In <u>Worldwide Church of God v. McNair</u>, 805 F.2d 888, 891 (9th Cir.

1986), the Ninth Circuit further commented:

> Although the federal district court may not
> exercise appellate jurisdiction over the
> judgment of a state court, a district court
> does have jurisdiction over a 'general'
> constitutional challenge that does not
> require review of a final state court
> decision in a particular case ... This
> distinction between a permissible general
> constitutional challenge and an impermissible
> appeal of a state court determination may be
> subtle, and difficult to make.

In <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462

(1983), the District of Columbia Court of Appeals had refused to

admit Feldman to the District of Columbia bar, because he had not

graduated from law school, a prerequisite to admission under the

District's bar rules.  Feldman filed a complaint in the federal

district court, claiming that the highest court in the district's

refusal to admit him to the bar violated his constitutional

rights.  The United States Supreme Court held that the federal

district court had jurisdiction to determine the

14

constitutionality of the district's bar rule, because such a determination did not require a review of "a state-court judgment in a particular case.' Id. at 486.  However, the district court had no jurisdiction to review Feldman's constitutional challenge to the application of the bar rule in his particular case.  Id. at 486-487.  The Supreme Court further explained that "[i]f the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the district court is in essence being called upon to review the state court decision.' Id. at 483-484 n.16.  In Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003), cert. denied, 540 U.S. 1213 (2004), the Ninth Circuit held:

> Rooker-Feldman is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state-court judgments.  If claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction ....

"Where the district court must hold that the state court was wrong in order to find in favor of the plaintiff, the issues presented in both courts are inextricably intertwined." Doe & Associates Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th

1  Cir. 2001).

2       Here, the FAC contains numerous allegations that erroneous

3  rulings were made by the various defendants in the criminal

4  proceedings against plaintiffs.

5       To the extent that the FAC seeks relief based on these

6  allegations of error, these claims are barred by the <u>Rooker-

7  Feldman</u> doctrine and are therefore dismissed against these

8  defendants.

9                      b.   <u>Heck v. Humphrey</u>.

10      According to the allegations of the FAC, one of the counts

11 in one of the criminal proceedings against Drake Ward resulted in

12 a conviction and imposition of sentence which has not been

13 overturned, another of the criminal proceedings resulted in a no

14 contest plea, the withdrawal of which is allegedly to have been

15 improperly denied, and yet another is still pending.

16      In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court

17 held:

18              [I]n order to recover damages for allegedly
                unconstitutional conviction or imprisonment,
19              or for other harm caused by actions whose
                unlawfulness would render a conviction or
20              sentence invalid, a § 1983 plaintiff must
                prove that the conviction or sentence has
21              been reversed on direct appeal, expunged by
                executive order, declared invalid by a state
22              tribunal authorized to make such
                determination, or called into question by a
23              federal court's issuance of a writ of habeas
                corpus ... A claim for damages bearing that
24              relationship to a conviction or sentence that
                has <u>not</u> been so invalidated is not cognizable
25              under § 1983.  Thus, when a state prisoner
                seeks damages in a § 1983 suit, the district
26              court must consider whether a judgment in

                              16

1        favor of the plaintiff would necessarily
imply the invalidity of his conviction or

2        sentence; if it would, the complaint must be
dismissed unless the plaintiff can

3        demonstrate that the conviction or sentence
has already been invalidated.  But if the

4        district court determines that the
plaintiff's action, even if successful, would

5        <u>not</u> demonstrate the invalidity of any
outstanding criminal judgment against the

6        plaintiff, the action should be allowed to
proceed, in the absence of some other bar to

7        the suit.

8  512 U.S. at 486-487.

9      The allegations in the FAC made by Ward with respect to his

10  conviction of infliction of corporal injury, and the charge

11  resulting in the no contest plea, and the criminal proceeding

12  that is still pending are such that this court's consideration of

13  those claims would necessarily the invalidity of his convictions

14  and/or sentence.  Essentially, Ward complains that he was

15  arrested without probable cause, that evidence was falsified,

16  that the prosecutor, defense attorney and judge conspired to make

17  various rulings, that defense counsel, as part of the conspiracy,

18  did not provide an adequate defense, and that the judges on the

19  Appellate Panel of the Kern County Superior Court made erroneous

20  rulings in connection with appeals or petitions made by Ward.

21  All of these claims against the judges specifically named as

22  defendants or sued as John Does Five through Nine are barred by

23  <u>Heck v. Humphrey</u> to the extent that those claims are made in

24  connection with the prosecution of Ward for inflicting corporal

25  injury in violation of California Penal Code § 273.5, with the

26  prosecution of Ward for being under the influence of a stimulant

1  in which Ward pleaded guilty and is now appealing the denial of

2  his motion to withdraw that plea, and with the prosecution of

3  Ward arising out of his arrest on December 3, 2004.

4          4.  Abstention - Younger v. Harris.

5       Noting that the allegations of the FAC imply that

6  proceedings in state court pertaining to the unsuccessful attempt

7  to withdraw the guilty plea are ongoing, the moving defendants

8  argue that this court should abstain from the exercise of subject

9  matter jurisdiction with respect to claims arising from Ward's

10 conviction in that criminal case pursuant to Younger v. Harris,

11 401 U.S. 37 (1971).

12      Younger and its progeny teach that federal courts may not,

13 where circumstances dictate, exercise jurisdiction when doing so

14 would interfere with state judicial proceedings.  See Middlesex

15 County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431

16 (1982).  A district court must abstain and dismiss a suit on the

17 basis of Younger where: (1) state proceedings are ongoing; (2)

18 important state interests are involved; and (3) the plaintiff has

19 an adequate opportunity to litigate federal claims in the state

20 proceedings.  Id. at 432.  As recently held in Gilbertson v.

21 Albright, 381 F.3d 965, 984 (9th Cir. 2004):

22              Younger principles apply in an action for
                damages pursuant to 42 U.S.C. § 1983 in which
23              the federal plaintiff brings a constitutional
                challenge to a state proceeding when that
24              proceeding is ongoing; the state proceeding
                is of a judicial nature, implicating
25              important state interests; and the federal
                plaintiff is not barred from litigating his
26              federal constitutional issues in that

                              18

proceeding.  This is because a federal court would necessarily have to determine whether the federal plaintiff's constitutional rights were violated, and any such determination would have the same practical effect on the state proceedings as the injunctive relief condemned in <u>Younger</u> and the declaratory relief constrained in <u>Samuels</u>.

To rule on the constitutional issue in these circumstances would implicate the state's interest in administration of its judicial system, risk offense because it unfavorably reflects on the state courts' ability to enforce constitutional principles, and put the federal court in the position of making a premature ruling on a matter of constitutional law.  Thus, the interests of comity counsel restraint.

However, when damages are at issue rather than discretionary relief, deference - rather than dismissal - is the proper restraint.  To stay instead of to dismiss the federal action preserves the state's interests in its own procedures, the federal plaintiff's opportunity to seek compensation in the forum of his choice, and an appropriate balance of federal-state jurisdiction.

From the allegations of the FAC,  Ward has filed appeals of his conviction of corporal injury on a spouse and of the denial of his motion to withdraw the no contest plea.  Essentially, he alleges that the no contest plea was coerced and that the denial of the motion was the result of the alleged conspiracy.  As ruled above, these claims are barred by absolute judicial immunity against the defendant judges to the extent that the FAC seeks damages.  However, because absolute judicial immunity does not bar claims for discretionary relief, the court concludes that abstention and dismissal of these claims against the moving defendants pursuant to <u>Younger v. Harris</u> is also appropriate.

1            5.  <u>John Does Five through Nine</u>.

2       As noted, the FAC contains allegations in Paragraphs 132 and

3 146 against John Does Five through Nine, each of whom is alleged

4 to be a judge of the appellate division of the Kern County

5 Superior Court.  Count Eight and Count Nine purport to state a

6 claim against John Does Five through Nine.  It is clear from the

7 allegations in the FAC that John Does Five through Nine are

8 entitled to dismissal of this action on the basis of absolute

9 judicial immunity, the <u>Rooker-Feldman</u> doctrine, <u>Heck v. Humphrey</u>,

10 and <u>Younger v. Harris</u>.

11       Accordingly, the FAC is dismissed with prejudice and without

12 leave to amend against defendants Judges John I Quinlen,

13 Catherine D. Purcell, Kenneth C. Twisselmann III, Frank A.

14 Hoover, and John Does Five through Nine.  The FAC is dismissed

15 against defendants Sherrie Leonard and Susan Yeargan with

16 prejudice and without leave to amend to the extent that the FAC

17 seeks monetary damages from these defendants.

18      D.  <u>Motion to Dismiss by Defendants Mack Wimbish, Mark</u>

19 <u>Arnold, Edward Jagels, David Boyd, Sam Smith, John Nobles, James</u>

20 <u>Newell, Pamela Belmore, Perry Patterson, Patrick Glennon, Jason</u>

21 <u>Belasis and County of Kern</u>.

22       These defendants move to dismiss the FAC for failure to

23 state a claim upon which relief can be granted.  Each ground will

24 be discussed under separate heading.

25            1.  <u>Rooker-Feldman Doctrine; Application of Heck v.</u>

26 <u>Humphrey</u>.

1    The County Defendants move to dismiss the First, Second,

2  Third, Fourth, Fifth, Seventh, Eighth, Tenth, Eleventh and

3  Twelfth Counts as barred by the Rooker-Feldman Doctrine and/or

4  the application of Heck v. Humphrey.

5    As discussed supra, Heck v. Humphrey bars the claims alleged

6  in the FAC pertaining to Ward's arrest, trial and conviction for

7  corporal injury, his arrest, criminal proceedings and guilty

8  plea/no contest plea to possession of paraphernalia, and the

9  criminal proceedings which appear to be pending.

10    However, Heck v. Humphrey does not bar those claims alleged

11  in the FAC relevant to the criminal charges against plaintiffs

12  for which Ward was acquitted or which were dismissed by the

13  Superior Court.  In addition, the FAC also alleges that defendant

14  Newell participated with defendant Hefner in an unlawful search

15  of plaintiff's vehicle and person on January 3, 2004, which

16  unlawful search did not result in the seizure of any evidence.

17  The allegations of the FAC concede that the initial stop of

18  plaintiff by defendant Hefner was lawful.  Nonetheless, it is

19  alleged that defendants Hefner and Newell subsequently searched

20  plaintiff's vehicle without probable cause.  Thereafter,

21  according to the allegations of the FAC, plaintiff's arrest for

22  violation of the Health and Safety Code resulted from defendants'

23  determination that plaintiff was under the influence of a

24  narcotic substance because of his elevated pulse rate.  In Heck,

25  the Supreme Court gave as examples of cases in which a

26  plaintiff's action, even if successful will not demonstrate the

21

invalidity of any outstanding criminal judgment against the plaintiff:

> For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still outstanding conviction. Because of doctrines like independent source and inevitable discovery ..., and especially harmless error ..., such a § 1983 action, even if successful, would not <u>necessarily</u> imply that the plaintiff's conviction was unlawful.  In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury ... which we hold today, does <u>not</u> encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned).

512 U.S. at 487 n.7.  In <u>Harvey v. Waldron</u>, 210 F.3d 1008, 1015 (9th Cir. 2000), the Ninth Circuit held:

> [A] § 1983 action alleging illegal search and seizure of evidence upon which criminal charges are based does not accrue until the criminal charges have been dismissed or the conviction has been overturned.  Such a holding will avoid the potential for inconsistent determinations on the legality of a search and seizure in the civil and criminal cases and will therefore fulfill the <u>Heck</u> Court's objectives of preserving consistency, and finality, and preventing 'a collateral attack on [a] conviction through the vehicle of a civil suit.' ....

Because of the allegation in the FAC that no evidence was seized pursuant to the search of plaintiff's vehicle and person, plaintiff's Section 1983 claim based on this allegedly unlawful search will not invalidate plaintiff's subsequent conviction. Therefore, this claim is not barred by <u>Heck</u>.

22

1    As discussed supra, the <u>Rooker-Feldman</u> doctrine bars the

2   numerous allegations in the FAC that erroneous rulings were made

3   in the four criminal proceedings at issue in this litigation.

4   Therefore, to the extent that plaintiffs' claims against these

5   moving defendants are based on allegedly erroneous rulings made

6   in the criminal proceedings, those claims are dismissed.

7          2.   <u>Consent to Search</u>.

8    Defendants move to dismiss the First Cause of Action on the

9   ground that the allegations of the Complaint establish that the

10  defendants requested permission to search the residence where

11  both plaintiffs lived and that plaintiff Jennevie Sanchez

12  consented to the search of the residence after defendants told

13  Sanchez that they believed Ward was under the influence of drugs.

14   These allegations involve the first of the criminal

15  proceedings brought against Ward.  There is no question that the

16  Complaint alleges that Sanchez consented to the search.  However,

17  there are also allegations that defendants Boyd, Smith and Nobles

18  "knowingly provided fraudulent information" to Sanchez that

19  "misled" Sanchez into believing that Ward was under the influence

20  of drugs and that drugs were inside their home, and that "[w]hile

21  Ms. Sanchez was in a highly emotional stated induced by the

22  events described above, defendant officers obtained permission

23  from Ms. Sanchez to search said residence."  These allegations

24  suffice to state a claim notwithstanding the allegations that Ms.

25

26

23

1  Sanchez consented to the search.[6]

2       3.  Absolute Prosecutorial Immunity.

3      Defendants Jagels and Patterson move to dismiss the Fourth,

4  Fifth and Eighth Counts on the ground of absolute prosecutorial

5  immunity.

6      In Imbler v. Pachtman, 424 U.S. 409, 431 (1976), the Supreme

7  Court held that prosecutors are absolutely immune from liability

8  for damages for their conduct in "'initiating a prosecution and

9  in presenting the State's case" insofar as that conduct is

10 'intimately associated with the judicial phase of the criminal

11 process.'"  When prosecutors perform administrative or

12 investigative functions that do not relate to an advocate's

13 preparation for the initiation of a prosecution or for judicial

14 proceedings, they are not entitled to absolute immunity.  Burns

15 v. Reed, 500 U.S. 478, 494-496 (1991).  The official seeking

16 absolute immunity bears the burden of showing that such immunity

17 is justified for the function in question.  Id. at 486.

18     In Imbler, the Supreme Court stated that "the duties of the

19 prosecutor in his role as advocate ... involve actions

20 preliminary to the initiation of a prosecution and actions apart

21 from the courtroom."  424 U.S. at 431 n.33:

22 ───────────────

23     [6]In addition, these defendants argue the allegations of
malicious prosecution are mere legal conclusions that do not state

24 a claim.  However, the FAC is replete with allegations that Ward
was charged and prosecuted pursuant to a conspiracy to retaliate

25 against him for testifying against officers and to prevent him from
proceeding with this lawsuit.  Whether or not Ward can prove these

26 allegations is a question of fact, not pleading.  Therefore,
dismissal of the FAC on this ground is denied.

> A prosecuting attorney is required,
> constantly, in the course of his duty as
> such, to make decisions on a wide variety of
> sensitive issues.  These include questions of
> whether to present a case to a grand jury,
> whether to file an information, whether and
> when to prosecute, whether to dismiss an
> indictment against particular defendants,
> which witnesses to call, and what other
> evidence to present.

Id.  Imbler further noted that a prosecutor's effort to control

the presentation of a witness' testimony is "a task fairly within

his function as an advocate."  Id. at 430 n.32.  In Buckley v.

Fitzsimmons, 509 U.S. 259, 273 (1993), the Supreme Court

emphasized that

> [w]e have not retreated ... from the
> principle that acts undertaken by a
> prosecutor in preparing for the initiation of
> judicial proceedings or for trial, and which
> occur in the course of his role as an
> advocate ..., are entitled to the protection
> of absolute immunity.  Those acts must
> include the professional evaluation of
> evidence assembled by the police and
> appropriate preparation for its presentation
> at trial or before a grand jury after a
> decision to seek an indictment has been made.

However, the Supreme Court held in Buckley:

> The question ... is whether the prosecutors
> have carried their burden of establishing
> that they were functioning as 'advocates'
> when they were endeavoring to determine
> whether the bootprint at the scene of the
> crime had been made by petitioner's foot.  A
> careful examination of the allegations
> concerning the conduct of the prosecutors
> during the period before they convened a
> special grand jury to investigate the crime
> provides the answer ... The prosecutors do
> not contend that they had probable cause to
> arrest petitioner or to initiate judicial
> proceedings during that period.  Their
> mission at that time was entirely

1              investigative in character.  A prosecutor
              neither is, nor should consider himself to
2              be, an advocate before he has probable cause
              to have anyone arrested.

3

4              It was well after the alleged fabrication of
              false evidence that a special grand jury was
              empaneled.  And when it was finally convened,
5              its immediate purpose was to conduct a more
              thorough investigation of the crime - not to
6              return an indictment against a suspect whom
              there was already probable cause to arrest
7              ... Under these circumstances, the
              prosecutors' conduct occurred well before
8              they could properly claim to be acting as
              advocates.  Respondents have not cited any
9              authority that supports an argument that a
              prosecutor's fabrication of false evidence
10            during the preliminary investigation of an
             unsolved crime was immune from liability at
11            common law, either in 1871 or at any date
             before the enactment of § 1983.  It therefore
12            remains protected only by qualified immunity.

13  509 U.S. at 274-275.  In Kalina v. Fletcher, 522 U.S. 118 (1997),

14  the Supreme Court held that a state prosecutor was entitled to

15  absolute immunity for submitting an unsworn information charging

16  the respondent with burglary and motion for an arrest warrant,

17  but was not entitled to absolute prosecutorial immunity for her

18  act of submitting a "Certification for Determination of Probable

19  Cause" in which she personally vouched, under penalty of perjury,

20  for the truth of the facts set forth in the Certification.  522

21  U.S. at 130-131.  The Supreme Court found that, in swearing to

22  the facts, the prosecutor had stepped outside the bounds of

23  advocacy and had assumed the role of a testifying witness.  In so

24  ruling, the Supreme Court rejected the argument that the

25  execution of the certificate

26        was just one incident in a presentation that,

viewed as a whole, was the work of an
advocate and was integral to the initiation
of the prosecution.  That characterization is
appropriate for her drafting of the
certification, her determination that the
evidence was sufficiently strong to justify a
probable-cause finding, her decision to file
charges, and her presentation of the
information and the motion to the court.
Each of these matters involved the exercise
of professional judgment; indeed, even the
selection of the particular facts to include
in the certification to provide the
evidentiary support for the finding of
probable cause required the exercise of the
judgment of an advocate.  But that judgment
could not affect the truth or falsity of the
factual statements themselves.  Testifying
about facts is the function of the witness,
not of the lawyer.  No matter how brief or
succinct it may be, the evidentiary component
of an application for an arrest warrant is a
distinct and essential predicate for a
finding of probable cause.  Even when the
person who makes the constitutionally
required 'Oath or affirmation' is a lawyer,
the only function that she performs in giving
sworn testimony is that of a witness.

522 U.S. at 130-131.

Here, with two exceptions, see discussion infra,
the allegations of the FAC that establish that defendant
Patterson is entitled to absolute prosecutorial immunity for the
actions or inactions allegedly taken by him against plaintiff in
the criminal prosecutions at issue.  All of the actions or
inactions were taken by defendant Patterson in his role as a
prosecutor.  As noted supra, absolute immunity is not lost by
allegations that a prosecutor conspired with a third party.  See
Ashelman v. Pope, supra, 793 F.2d at 1078.

The two exceptions are based on the following allegations:

27

61.  Without justification, probable, or
legal cause, defendant PATTERSON testified
falsely as a complaining witness against Mr.
Ward under penalty of perjury, that all the
information in complaint DA Case: COM
0495026, was by his belief true and correct
that Mr. Ward was in violation of H&SC §
11550(a), and PC § 273.5(a)
...

175.  Defendant PATTERSON falsely testified
as a complaining witness against Mr. Ward
under penalty of perjury, that all the
information contained in complaint DA Case:
COM 0504780, was by his belief true and
correct that Mr. Ward did use or be under the
influence of a controlled substance in
violation of H&SC § 11550(a)

The allegations in paragraphs 61 and 175 allow the inference
that Deputy District Attorney Patterson swore out the complaint
against plaintiff Ward in those cases under penalty of perjury.
Because of that inference and given the holding in <u>Kalina</u>, the
court cannot conclude that defendant Patterson is entitled to
absolute prosecutorial immunity for this action based on the
allegations in paragraphs 61 and 175 of the FAC as a matter of
law.

Relying on absolute prosecutorial immunity, District
Attorney Jagels also moves to dismiss the allegations against him
in paragraphs 283-284 of the Fourth Count that "[p]rior to
September 18, 2003, [Jagels] ... developed and maintained
policies or customs of the Kern County District Attorney
exhibiting deliberate indifference to Mr. Ward's Constitutional
right to be informed of the nature of the charges against him and
to have a meaningful opportunity to be heard and the denial of

1  said rights ... [and] failed to properly train officers, or

2  employees ... as to their legal duties to not violate Mr. Ward's

3  Constitutional right to be informed of the nature of the charges

4  against him and to have a meaningful opportunity to be heard ...

5  [and i]f training was provided, it was inadequate in relation to

6  the tasks that the officers, or employees were required to

7  perform and deficiencies in the training program were closely

8  related to the damages to the Plaintiffs."

9       Defendant Jagels is entitled to dismissal of this action

10  against him on the basis of absolute prosecutorial immunity.  In

11  Modahl v. County of Kern, 2003 WL 1870878 (9th Cir. 2003), the

12  Ninth Circuit affirmed summary judgment for Jagels, holding in

13  pertinent part:

14          Modahl's complaint alleged that Jagels, as
            the district attorney, condoned or ratified
15          alleged coercive questioning, failed to
            properly train or supervise his subordinates,
16          causing a failure to disclose exculpatory
            evidence and the creation of unreliable child
17          witness testimony, and conspired to fabricate
            evidence and to conceal exculpatory evidence.
18          Upon de novo review of the district court's
            order, we affirm the grant of absolute
19          immunity to District Attorney Jagels on these
            claims.
20
            Jagels, as district attorney, is considered a
21          state official for purposes of § 1983
            liability while preparing to prosecute and
22          when prosecuting violations of state law, and
            also when training personnel for and when
23          developing policy regarding the preparation
            for prosecution of violations of state law.
24          Pitts v. County of Kern, 17 Cal.4th 340, 360,
            366 ... (1998).  A state prosecutor is
25          entitled to absolute immunity from liability
            under § 1983 for violating a person's federal
26          constitutional rights when he or she engages

> in activities 'intimately associated with the judicial phase of the criminal process.' <u>Imbler v. Pachtman</u>, ....  A prosecutor is granted only qualified immunity, however, if he or she is performing investigatory or administrative functions, or is essentially functioning as a police officer or detective. <u>Buckley v. Fitzsimmons</u> ....
>
> Modahl argues that Jagels' 'nonadvocatory conduct' and administrative actions caused violations of his constitutional rights. However, our record reveals that Jagels' management and supervision of his staff involved actions preliminary to the initiation of prosecution and actions in preparation of the initiation of the criminal process and for trial.  These actions fall within the sphere of prosecutorial duties, which are granted absolute immunity.

<u>See also</u> <u>Hamilton v. Dailey</u>, 777 F.2d 1207, 1213 n. 5 (7th Cir. 1985):

> Counts IV and V charged State's Attorney Richard M. Daley and Cook County with negligently failing to train and supervise their employees, in allowing the acts alleged in the previous counts to take place.  Since absolute immunity protects prosecutorial decisions, supervision of the prosecutors who make these decisions is similarly immune.

Here, because the allegations of the FAC, with the possible exceptions discussed <u>supra</u>, demonstrate that Patterson is entitled to absolute prosecutorial immunity, it follows from the cases cited above that Jagels is also entitled to absolute prosecutorial immunity.

    4.   <u>District Attorney Defendants as State Officers</u>.

Defendants Patterson and Jagels further move to dismiss the allegations against them on the ground that neither was acting on behalf of the County of Kern at the time these prosecutions

1 occurred.

2     A state official acting in his official capacity is not

3 considered a "person" against whom a claim for money damages

4 pursuant to Sections 1983 and 1985 might be asserted.  <u>Will v.</u>

5 <u>Michigan Dept. of State Police</u>, 491 U.S. 58, 66 (1989); <u>Carmen v.</u>

6 <u>San Francisco Unified School Dist.</u>, 982 F.Supp. 1396, 1404

7 (N.D.Cal. 1997), <u>aff'd</u>, 237 F.3d 1026 (9th Cir. 2001).

8     In <u>Weiner v. San Diego County</u>, 210 F.3d 1025, 1028-1031 (9th

9 Cir. 2000), the Ninth Circuit held that a California district

10 attorney is a state officer when deciding whether to prosecute an

11 individual.  In so ruling, the Ninth Circuit followed the holding

12 by the California Supreme Court in <u>Pitts v. County of Kern</u>, 17

13 Cal.4th 340 (1998), wherein the California Supreme Court,

14 utilizing the analysis set forth in <u>McMillan v. Monroe County</u>

15 <u>Alabama</u>, 520 U.S. 781 (1997), analyzed California law and held

16 that a district attorney is a state official for purposes of

17 Section 1983 liability while acting in his prosecutorial

18 capacity.  However, in <u>Bishop Paiute Tribe v. County of Inyo</u>, 291

19 F.3d 549 (9th Cir. 2002), <u>vacated on other grounds</u>, 538 U.S. 701

20 (2003), the Ninth Circuit held the district attorney was not

21 preparing to prosecute or prosecuting criminal violations when

22 the district attorney obtained and executed a search warrant in

23 order to investigate allegations of welfare fraud.  291 F.3d at

24 564-565.  In so holding, the Ninth Circuit analogized to the

25 cases discussing entitlement to absolute prosecutorial immunity,

26 relying on the holdings in <u>Fletcher v. Kalina</u>, <u>supra</u>, that a

1   prosecutor is not entitled to absolute immunity for conduct in

2   preparing a sworn declaration in support of an arrest warrant,

3   and in <u>Buckley v. Fitzsimmons</u>, <u>supra</u>, that a prosecutor is not

4   entitled to absolute prosecutorial immunity when he allegedly

5   fabricated evidence during the investigation by retaining a

6   dubious expert witness.  The Ninth Circuit held in pertinent

7   part:

8               Relying on <u>Fletcher</u> and <u>Buckley</u>, and
                recognizing the significant factual
9               distinctions between this case and <u>Pitts</u>, we
                find that the District Attorney was engaging
10              in investigatory, and not prosecutorial, acts
                when he obtained and executed a search
11              warrant over the Tribe.  This conclusions
                compels our finding that the District
12              Attorney acted as a county officer when
                obtaining and executing a search warrant
13              against the Tribe.

14  291 F.3d at 565.

15       Consequently, defendants Jagels and Patterson are entitled

16  to dismissal of the allegations against them in their individual

17  capacities on this ground to the extent that Patterson and Jagels

18  are entitled to absolute prosecutorial immunity from liability.

19            5.  <u>Public Defender Defendants</u>.

20       Assistant Public Defendant Glennon and Public Defender

21  Arnold move to dismiss the allegations against them.

22       In <u>Polk County v. Dodson</u>, 454 U.S. 312 (1981), the Supreme

23  Court held that when an assistant public defender is performing

24  the traditional role of an attorney for a client, the public

25  defender is not acting "under color of state law" for purposes of

26  suit under Section 1983.  454 U.S. at 318-319.  Although

1  concluding that an assistant public defender does not act under

2  color of state law when exercising his or her independent

3  professional judgment in a criminal proceeding, the Supreme Court

4  cautioned that a public defender might be found to act under

5  color of state law while performing administrative or

6  investigative functions.  Id. at 325.

7      Here, the allegations against defendant Glennon establish

8  that all of plaintiffs' claims against Glennon arise out of the

9  exercise of Glennon's professional judgment in his representation

10  of Ward in the the criminal proceeding in which he was appointed

11  to represent him.

12      However, in Tower v. Glover, 467 U.S. 914, 923 (1984), the

13  Supreme Court held that state public defenders are not immune

14  from liability under Section 1983 for intentional misconduct,

15  under color of state law, by virtue of alleged conspiratorial

16  action with state officials that deprive their clients of federal

17  rights.

18      As noted, the FAC alleges in paragraph 1 that the defendants

19  conspired to charge and prosecute Ward in retaliation against him

20  for testifying against two "defendant officers" in a criminal

21  hearing, which was subsequently dismissed, and to deter Ward from

22  freely testifying in a civil rights action filed in the United

23  States District Court for the Eastern District of California.

24      Vague and conclusory allegations of official participation

25  in civil rights violations are not sufficient to withstand a

26  motion to dismiss.  See Ivey v. Board of Regents, 673 F.2d 266,

33

268 (9th Cir. 1982); <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th

Cir. 1980).  The Complaint must allege facts from which it may be

inferred that an agreement or meeting of the minds to violate the

plaintiff's constitutional rights may be inferred.  <u>See Woodrum</u>

<u>v. Woodward County</u>, 866 F.2d 1121, 1126 (9th Cir. 1989); <u>see also</u>

<u>Smith v. Bacon</u>, 699 F.2d 434, 436 (8th Cir. 1983):

> 'Complaints will be sustained against private
> persons who conspire with immune public
> officials if the allegations of conspiracy
> are sufficiently specific.' ....
>
> ... The factual basis need not be extensive,
> but it must be enough to avoid a finding that
> the suit is frivolous ... Appellants must at
> least allege that 'the defendants had
> directed themselves toward an
> unconstitutional action by virtue of a mutual
> understanding,' and provide some facts
> 'suggesting such a "meeting of the minds."'

Furthermore, it is not enough that a judge's rulings be arguably

unconstitutional or erroneous to support an allegation of

conspiracy.  Such an allegation must be supported by specific

allegations of conspiratorial actions, apart from the judge's

rulings on motions.  <u>See Schucker v. Rockwood</u>, 846 F.2d 1202,

1205 (9th Cir. 1988).

Here, the allegations that Glennon conspired with the other

defendants is not supported by any facts inferring a meeting of

the minds.  First of all, it is noted that Glennon obtained an

acquittal on one of the charges against Ward.  Furthermore, for

example, Ward alleges in paragraph 83 that Glennon's cross-

examination of Sanchez resulted in evidence from which the jury

could have inferred that Ward acted in self-defense being

34

concealed from the jury and that "[t]he only possible reason for the acts of defendant GLENNON ... was that he was not defending Mr. Ward, but was defending the misconduct of the defendant officers."   In paragraphs 90-93, Ward alleges that defendant Patterson objected to the admission of certain testimony as hearsay, that Glennon failed to argue to the contrary and that defendant Quinlan sustained Patterson's objection.   In paragraph 102, Ward alleges that defendants Quinlen, Patterson, Glennon, Boyd, Smith, and Nobles "conspired to set up an unconstitutional policy wherein defendant GLENNON would not cross-examine defendants BOYD, SMITH, and NOBLES to any degree that would reveal misconduct by the defendant officers ... [and that] GLENNON pretended to defend Mr. Ward while he did in fact actually defend the defendant officers."   In paragraph 103, it is alleged that defendants Quinlen, Patterson, Glennon, Boyd, Smith, and Nobles "conspired to set up an unconstitutional policy wherein Defendant PATTERSON will maliciously prosecute accused defendants with H&SC § 11550(a) based solely upon the OPINION of the arresting officer, and without probable cause."   In paragraph 113, Ward alleges that Glennon conspired with defendants Patterson and Quinlen to remove a motion for new trial that Ward attempted to file pro se from the record.   In Count Three, it is alleged in pertinent part:

> 265.  Upon information and belief, defendant GLENNON has worked out of the same small town court system of the East Kern Judicial system for many years, and its [sic] reasonable to believe that after so many years of working

with the same officers year in and year out
that a public defender such as defendant
GLENNON would build a friendship with those
officers.  It's also reasonable to believe
that when such a friendship is certain to
occur after so many years, that when it comes
time to reveal misconduct of that friend to a
community of jurors, the defendants [sic]
representation is most certain to be
compromised, unless adequate safeguards and
monitoring by supervisors has been put in
place.

266.  Upon information and belief, defendants
QUINLEN, PATTERSON, GLENNON, BOYD, SMITH,
NOBLES, and each of them, conspired to set up
an unconstitutional policy wherein defendant
GLENNON would not cross-examine defendants
BOYD, SMITH, and NOBLES to any degree that
would reveal misconduct by the defendant
officers.  Defendant GLENNON pretended to
defend Mr. Ward while he did in fact actually
defend the defendant officers.  In addition,
defendants conspired to practice the said
policy during the cross-examination of Ms.
Sanchez.

Count Eight also alleges the conspiracy in conclusory fashion.

Although Ward alleges specific acts that he believes were in

furtherance of the conspiracy, the only allegation from which a

meeting of the minds between Glennon and the other defendants may

be inferred to retaliate against Ward because of his testimony in

the Barnes v. Ash matter and to deter Ward from testifying in the

alleged federal civil rights action filed by Dorothy Barnes is

the allegation that Glennon must have been a friend of the deputy

sheriffs because he had practiced in the area for a long time.

That is not a sufficient allegation on which to hang a claim of

conspiracy to make Glennon a state actor.  Consequently, the

claims against defendant Glennon are dismissed with leave to

36

amend to allege with the required specificity the basis upon which plaintiffs rely in contending that defendant Glennon had a meeting of the minds with the other defendants with regarded to the alleged conspiracy.

Count Three is also alleged against Public Defender Arnold. Count Three alleges that Glennon denied Ward's request to have expert witnesses called to testify on his behalf at trial and denied Ward's request to file Ward's pro se discovery motion "under an unconstitutional policy or custom promulgated and administered by defendant ARNOLD, wherein public defenders are not allowed to call an expert witness ... in misdemeanor cases" and "under an unconstitutional policy or custom promulgated and administered by defendant ARNOLD, wherein public defenders rely on a 'Universal Discovery Motion' drafted by defendant ARNOLD and posted at some location within his office that compels the prosecution to disclose all evidence to his deputy public defenders."  Count Three further alleges:

> 270.  Prior to September 18, 2003, it was clearly established that an accused misdemeanor defendant has a right to call expert witnesses on their behalf at trial, to have pre-trial motions heard, to cross-examine arresting officers, to redress the court for grievances, and to have adequate representation by an attorney.
>
> 271.  Prior to September 18, 2003, defendants ARNOLD, and the COUNTY developed and maintained policies or customs of the Kern County Public Defender exhibiting deliberate indifferences to the Constitutional rights of Mr. Ward to have expert witnesses called to testify at misdemeanor trials, to have pre-trial motions heard, to cross-examine

arresting officers, to redress the court for grievances, and to have adequate representation by an attorney and the denial of said rights.

272.  Prior to September 18, 2003, defendants ARNOLD, and the COUNTY failed to properly train officers, or employees, under their authority, as to their legal duties to not violate Mr. Ward's Constitutional right to due process, in particular, to have an expert witness called to testify in his defense at trial, to have pre-trial motions argued on behalf of his defense, to have adverse cross-examination of the arresting officers, to have access to the court redress the court [sic], and to have representation by an attorney.  If training was provided, it was inadequate in relation to the tasks that the officers, or employees were required to perform and deficiencies in the training program were closely related to the damages to the Plaintiffs.

Defendants move to dismiss the claims against Arnold, asserting that Arnold did not represent Ward, that Ward merely complains about how Arnold distributes the Public Defender's budget and trains his staff.  Defendant argue that none of these acts are completed under color of state law.  Alternatively, citing Rowe v. Schrieber, 139 F.3d 1381 (11th Cir. 1998), defendants argue that Arnold may not be held liable here because there is no clearly established right to have the resources of the public defender's office administratively allocated in a specific manner or to have certain administrative decisions made.

However, a fairly recent decision from the Ninth Circuit is relevant to the resolution of this issue.

In Miranda v. Clark County, Nevada, 319 F.3d 465 (9th Cir.), cert. denied, 540 U.S. 814 (2003), the Ninth Circuit, en banc,

38

addressed "whether the head of a county public defender's office, as the administrative head of an organization formed to represent criminal defendants, may be held accountable under 42 U.S.C. § 1983 for a policy that leads to a denial of an individual's right to effective representation of counsel."  319 F.3d at 466. Miranda was convicted of capital murder.  His conviction was overturned pursuant to a habeas petition.  Miranda then sued in federal court Rigsby, the assistant public defender who had represented him and Harris, the head of the Clark County Public Defender's Office.  The district court dismissed the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  The Ninth Circuit reversed.  In pertinent part, Miranda's complaint alleged that the assistant public defender's representation was ineffective because of the policies promulgated by the Public Defender of (1) administering a lie detector test to all defendants and allocating minimal resources for preparation of defense to those clients who appear guilty because they failed the polygraph; and (2) of assigning the least-experienced lawyers on the staff to capital cases without training or experience in the special demands of such cases.  The Ninth Circuit ruled that the Complaint effectively alleged that the Public Defender made no particularized decisions through the exercise of independent professional judgment in the defense of a client because of the allegations that these policies rendered the Public Defender deliberately indifferent to Miranda's constitutional rights, including the right to the effective

assistance of counsel.  The Ninth Circuit affirmed the dismissal

of the action against Rigsby pursuant to Polk County on the

ground that Rigsby was not a state actor.  In reversing the

dismissal of the claim against Harris, the head of the Public

Defender's Office, the Ninth Circuit ruled in pertinent part:

> The situation with respect to Harris, the administrative head of the County Public Defender's Office, is different.  Insofar as this case is concerned, he was not acting under any of the ethical standards of the lawyer-client relationship to which Rigsby was bound.  The nature and context of Harris's function was administrative.  He was, according to the complaint, acting solely as the administrative head of the agency, responsible for allocating the office's finite resources.  Also according to the complaint, he instituted certain policies as part of his administrative functions that resulted in the miscarriage of justice represented by the plaintiff's death sentence.  We deal with each of these policies in turn.
>
> ...
>
> The policy in question, for purposes of this appeal, is an alleged policy that subjected each client to a polygraph test and then allocated the resources of the office according to the result of that test.  According to the complaint, 'if a client failed a polygraph examination, as determined by the subjective assessment of the polygraph examiner, minimal investigation would be conducted and a limited defense would be provided.'  Thus, if a client appeared on the basis of a polygraph to be lying about his innocence, he would be provided minimal resources to develop a defense.  Construed in a light most favorable to the plaintiff, this allegation means that those clients who claimed innocence, but appeared to be guilty, were provided inadequate resources to mount an effective defense.

40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

In evaluating the viability of the claim, we must first determine whether Harris's implementation of such a standard constitutes state action for purposes of § 1983.  As we have seen, Rigsby, in undertaking the actual defense of Miranda, entered into an attorney-client relationship that placed him in a role that exempts him from liability under § 1983 as a state actor.  Harris, however, is alleged to have been acting as the administrative head of the office in determining how the resources of Clark County would be distributed.

In allocating the county's funds, Harris was performing essentially an administrative role on behalf of Clark County.  It was a function similar to that performed by the head of every government administrative office.  See, e.g. Nev.Rev.Stat. chs. 180.080, 260.010,-040,-070,-075 (requiring of state and county public defenders expenditure reports and providing for institution and regulation of public defender offices).  It therefore materially differs from the relationship inherent in a public defender's representation of an individual client.  Polk County, 454 U.S. at 322 n.13, 324-25 ... The conduct alleged falls within the type of administrative action adumbrated by the Supreme Court in Polk County, when it recognized the possibility that a public defender's 'administrative and possibly investigative functions' would constitute state action.  Id. at 325 ...; see also McCollum, 505 U.S. at 54 ... (reaffirming that the Public Defender may be a state actor with respect to administrative or investigatory functions).  We thus conclude that Harris was acting on behalf of Clark County in determining how the overall resources of the office were to be spent, and he qualifies as a state actor for purposes of § 1983.

That conclusion also is mandated by principles enunciated in Monell, in which the Court held that counties and municipalities are amenable to § 1983 liability for constitutional deprivations resulting from application of governmental custom or policy.

41

1          The resource allocation policy alleged in
           this case constitutes a viable claim and
2          subjects Harris to suit as a policymaker on
           behalf of Clark County ....
3
           The remaining question is whether the alleged
4          policy resulted in deprivation of the
           plaintiff's constitutional rights to
5          effective representation of counsel.  That
           constitutional guarantee is of effective
6          representation of all defendants, regardless
           of guilt or innocence ... Here, according to
7          the plaintiff, if the criminal defendant
           appeared on the basis of the polygraph test
8          to be guilty, the office sharply curtailed
           the quality of the representation by limiting
9          the investigatory and legal resources
           provided.  The policy, while falling short of
10         complete denial of counsel, is a policy of
           deliberate indifference to the requirement
11         that every criminal defendant receive
           adequate representation, regardless of
12         innocence or guilt ... This is a core
           guarantee of the Sixth Amendment and a right
13         so fundamental that any contrary policy
           erodes the principles of liberty and justice
14         that underpin our civil rights ....

15         We recognize, of course, that allocation of
           resources must be made upon some criteria and
16         not all result in denial of effective
           representation.  We hold only that the
17         determination cannot be based solely or even
           principally on polygraph results.  In so
18         holding, we express no opinion on whether the
           result of a polygraph test may be used as one
19         of a number of factors employed in
           determining the extent of investigative
20         resources to devote to a particular
           defendant's case.  We hold only that
21         polygraph results cannot be determinative.

22   319 F.3d at 469-470.

23        Based on the court's review of Miranda, the court concludes

24   that the alleged policies of relying upon a "universal discovery

25   motion" and of precluding a defendant represented by a public

26   defender from filing pro se motions in the criminal action are

42

1  not actionable against defendant Arnold.  Because Ward was

2  represented by counsel in the criminal proceeding, he had no

3  constitutional right to file motions or other documents in the

4  criminal case pro se.  See Abdullah v. United States, 240 F.3d

5  683, 686 (8th Cir.), cert. denied, 534 U.S. 923 (2001).  The use

6  of by the public defender of a "universal" discovery motion

7  cannot be seen as an administrative decision based on allocation

8  of resources similar to that at issue in Miranda.  Therefore, to

9  the extent that the FAC's claim against defendant Arnold is based

10  on these allegations, the FAC is dismissed with prejudice and

11  without leave to amend.

12      More problematic issue is the alleged policy of not allowing

13  the use of expert witnesses in misdemeanor cases.  Arguably,

14  based on Miranda, that allegation may be actionable against

15  Arnold.  Consequently, defendant Arnold's motion to dismiss the

16  FAC with regard to this claim is denied without prejudice.

17              6.  County Policymaker.

18      Defendants argue that the allegations of the FAC against the

19  County of Kern should be dismissed because plaintiffs have failed

20  to identify a County policymaker.

21      In so arguing, defendants contend that the Kern County

22  Sheriff is not a County policymaker for purposes of Section 1983

23  when performing his law enforcement function.  Defendants rely on

24  Venegas v. County of Los Angeles, 32 Cal.4th 820 (2004).

25      Municipalities can be held liable under Section 1983 for

26  actions which result in a deprivation of constitutional rights.

43

Monell v. Dep't of Social Services, 436 U.S. 658, 690 (1978).  A municipality, however, cannot be held liable on a respondeat superior theory.  Id. at 691.  To hold a local government liable for an official's conduct, a plaintiff must establish that the government official "(1) had final policymaking authority 'concerning the action alleged to have caused the particular constitutional or statutory violation at issue' and (2) was the policymaker for the local governing body for the purposes of the particular act."  Weiner v. San Diego County, 210 F.3d 1025, 1028 (9th Cir. 2000).  However, states and state officers sued in their official capacities are not considered persons under Section 1983 and are immune from liability under the statute by virtue of the Eleventh Amendment and the doctrine of sovereign immunity.  Howlett v. Rose, 496 U.S. 356, 365 (1990); Will v. Michigan Dept. of State Police, 491 U.S. 58, 63-67 (1989).  When determining whether an official acted on behalf of the state or on behalf of the county, the court employs the analytical framework set out in McMillan v. Monroe County, 520 U.S. 781 (1997).  In McMillan, the Supreme Court held that an Alabama sheriff could not be sued under Section 1983 for intimidating witnesses into making false statements and suppressing exculpatory evidence because the sheriff was exercising state authority.  In reaching this conclusion, the Supreme Court inquired "whether governmental officials are final policymakers for the local government in a particular area or on a particular issue."  520 U.S. at 785.

44

1    <u>Venegas v. County of Los Angeles</u>, <u>supra</u>, involved a Section
2    1983 claim against the County of Los Angeles alleging an
3    unconstitutional search and seizure.  The California Supreme
4    Court addressed whether sheriff's department employees sued in
5    their official capacities for the unlawful acts of their
6    subordinate officers may be held liable for constitutional
7    violations carried out under their department's own regulations,
8    policies, customs or usages by persons having "final policymaking
9    authority."  Prior to <u>Venegas</u>, the Ninth Circuit held that
10   sheriffs act as agents of the County, not the state.  <u>See</u> <u>Bishop</u>
11   <u>Paiute Tribe v. County of Inyo</u>, 291 F.3d 549 (9th Cir. 2002),
12   <u>vacated on other grounds</u>, 538 U.S. 701 (2003)(sheriff acted as a
13   county officer when executing a search warrant); <u>Brewster v.</u>
14   <u>Shasta County</u>, 275 F.3d 803 (9th Cir. 2001), <u>cert. denied</u>, 537
15   U.S. 814 (2002)(sheriff acts for the County when investigating
16   crime in the County).  However, after examining <u>Bishop Paiute</u>
17   <u>Tribe</u> and <u>Brewster</u> in light of <u>McMillan</u> and California caselaw,
18   including <u>Pitts v. County of Kern</u>, 17 Cal.4th 340 (1998) and
19   <u>County of Los Angeles v. Superior Court</u>, 68 Cal.App.4th 1166
20   (1998), the California Supreme Court concluded that "California
21   sheriffs act as state officers while performing state law
22   enforcement duties such as investigating possible criminal
23   activity."  32 Cal.4th at 839.

24       The question before the court is whether this court is bound
25   by <u>Venegas</u> or by <u>Brewster</u>.  Defendants argue that the
26   identification of final policy-making authority is a pure

45

question of state law, citing <u>City of St. Louis v. Praprotnik</u>,

485 U.S. 112, 124, 126 (1988):

> [T]he identification of policymaking
> officials is a question of state law ... Thus
> the identification of policymaking officials
> is not a question of federal law, and it is
> not a question of fact in the usual sense.
> ....
>
> ...
>
> [A] federal court would not be justified in
> assuming that municipal policymaking
> authority lies somewhere other than where the
> applicable law puts it. ....

Defendants also cite <u>McMillan</u>:

> [O]ur inquiry is dependent on an analysis of
> state law ... This is not to say that state
> law can answer the question for us by, for
> example, simply labeling as a state official
> an official who clearly makes county policy.
> But our understanding of the actual function
> of a governmental official, in a particular
> area, will necessarily be dependent on the
> definition of the official's function under
> relevant state law.

520 U.S. at 786.  Defendants also note that the Ninth Circuit

holds that "[w]hen interpreting state law, federal courts are

bound by decisions of the state's highest court."  <u>Nelson v. City

of Irvine</u>, 143 F.3d 1196, 1206-1207 (9th Cir.), <u>cert. denied</u>, 525

U.S. 981 (1998).

It is unclear that the Ninth Circuit will agree that whether

the sheriff acted for the state or for the County is solely an

issue of state law, thereby compelling the Ninth Circuit to

follow <u>Venegas</u> notwithstanding the holdings in <u>Brewster</u> and

<u>Bishop Paiute Tribe</u>.  In <u>Weiner v. San Diego County</u>, <u>supra</u>, 210

F.3d at 1029, the Ninth Circuit addressed whether the district
attorney acted as a state, rather than county, official when he
decided to proceed with criminal prosecution of an accused
following the grant of a new trial.  In reaching its conclusion,
the Ninth Circuit noted that the California Supreme Court in
Pitts v. County of Kern, 17 Cal.4th 340 (1998), held that a
district attorney was a state official for purposes of § 1983
liability while acting in his prosecutorial capacity.  The Ninth
Circuit then stated:

> The California Supreme Court is the ultimate
> interpreter of California state law ... This
> does not mean, however, that we must blindly
> accept its balancing of the different
> provisions of state law in determining
> liability under § 1983.  In McMillan, the
> Court stated that 'our inquiry is dependent
> on an analysis of state law,' which does not
> mean 'that state law can answer the question
> for us by, for example, simply labeling as a
> state official an official who clearly makes
> county policy.  But our understanding of the
> actual function of a governmental official,
> in a particular area, will necessarily be
> dependent on the definition of the official's
> function under relevant state law.' ... We
> must, therefore, examine California's
> constitution, statutes, and case law.

210 F.3d at 1029.  The Ninth Circuit's statement in Wiener
precludes this court from applying Venegas, given the holdings in
Brewster and Bishop Paiute.  This court is bound by the Ninth
Circuit's rulings until overturned or distinguished by the Ninth
Circuit.

Finally, defendants assume that the only potential
policymaker in this litigation is the Sheriff.  However, the Kern

47

County Public Defender is also a defendant in this action and could be found to be a policymaker on behalf of the County.

Therefore, the motion to dismiss as against the County of Kern is denied on this ground.

7.  <u>Claims Against Wimbish, Arnold, and Jagels in Their Individual Capacities</u>.

As noted above, Kern County Sheriff Mack Wimbish, Kern County Public Defender Mark Arnold, and Kern County District Attorney Edward Jagels are sued in their individual capacities as well as in their official capacities.

These defendants move to dismiss the FAC against them on the ground that it does not allege that any of these defendants completed any act that resulted in the deprivation of plaintiffs' constitutional rights.

As explained in <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989):

> Liability under section 1983 arises only upon a showing of personal participation by the defendant ... A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no respondeat superior liability under section 1983.

The FAC suffices to withstand a motion to dismiss on this ground.  The FAC alleges that each of these defendants failed to adequately supervise and train their subordinates.  "It is well established that a governmental officer may be held liable for damages for his failure to adequately supervise or train his

48

1   subordinates."   Ting v. United States, 927 F.2d 1504, 1512 (9th

2   Cir. 1991).

3        Therefore, the motion to dismiss is denied on this ground.

4        E.   Motion to Dismiss by Defendant Attorney General Bill

5   Lockyer.

6        The FAC alleges that Attorney General Lockyer "is

7   responsible for the direct supervision over the Kern County

8   District Attorney and the Kern County Sheriff in all matters

9   pertaining to the duties of their respective offices".   Count

10  Twelve alleges in pertinent part:

11           343.   Prior to December 16, 2003, it was
             clearly established that a United States
12           citizen has a right to self-defense and to
             due process of law.   Defendant LOCKYER knew
13           that an error existed in jury instructions
             CALJIC No. 5.56, which failed to account for
14           the circumstances in Mr. Ward's case where
             the counter assault was so sudden and
15           perilous that no opportunity was give [sic]
             to Mr. Ward to decline further to fight and
16           he could not retreat with safety, and said
             error denied Mr. Ward, Ms. Sanchez, and other
17           U.S. citizens the right to self-defense and
             due process of law.

18
             344.   Prior to December 16, 2003, defendant
19           LOCKYER repeatedly allowed said jury
             instruction to be used against United States
20           citizens in violation of the Fourth, Fifth,
             and Fourteenth Amendments of the United
21           States Constitution.

22           345.   Prior to September 18, 2003, defendants
             LOCKYER, WIMBISH, JAGELS, and the COUNTY
23           developed and maintained policies or customs
             of the Kern County Sheriff's Department, and
24           Superior Court of California exhibiting
             deliberate indifference to the Constitutional
25           rights of the Plaintiffs to be free from
             false imprisonment and loss of consortium
26           without due process of law.

                              49

1

2

3

4

5

6

7

        346.   Prior to September 18, 2003, defendants
LOCKYER, WIMBISH, and the COUNTY of KERN
failed to properly train officers, or
employees, under their authority, as to their
legal duties to not violate Plaintiffs'
Constitutional right to be free from arrest
for self defense and without due process of
law.  If training was provided, it was
inadequate in relation to the tasks that the
officers, or employees were required to
perform and deficiencies in the training
program were closely related to the damages
to the Plaintiffs.

8   Defendant Lockyer moves to dismiss the FAC against him on

9   various grounds.

10   1. <u>Person</u>.

11   To the extent that the FAC is alleged against Lockyer in his

12   official capacity, the FAC does not state a claim upon which

13   relief can be granted.  Lockyer, as an official of the State of

14   California, is not a "person" within the meaning of the federal

15   civil rights statutes.  <u>Hafer v. Malo</u>, 502 U.S. 21, 26-27 (1991).

16   Therefore, this action is dismissed against defendant

17   Lockyer with prejudice and without leave to amend to the extent

18   that Lockyer is sued in his official capacity.

19   2. <u>Rooker-Feldman Doctrine; Application of Heck v.</u>

20   <u>Humphrey</u>.

21   Lockyer also moves to dismiss the allegations against him

22   that he failed to correct an allegedly defective jury instruction

23   and that he failed to properly train officers of the Kern County

24   Sheriff's Department and the Kern County District Attorneys'

25   Office on the ground that such claims necessarily imply the

26   invalidity of Ward's conviction and, therefore, are barred by the

1   Rooker-Feldman doctrine and Heck v. Humphrey.  See discussion

2   supra.

3        To the extent that the FAC alleges that Lockyer failed to

4   correct an allegedly defective jury instruction, the court rules

5   that this claim is barred by the Rooker-Feldman doctrine and Heck

6   v. Humphrey.  Such a claim, arising in connection with Ward's

7   conviction of corporal injury in violation of Penal Code § 273.5,

8   which conviction is on appeal, cannot be heard by this court.

9        Even were this claim not barred by the Rooker-Feldman

10   doctrine and Heck v. Humphrey, the court would dismiss it for

11   failure to state a claim upon which relief can be granted.

12   California Jury Instructions, Criminal (CALJIC) are prepared by

13   the Committee on Standard Jury Instructions, Criminal, of the

14   Superior Court of Los Angeles County.  Although not mandated by

15   statute, their use is recommended by the Judicial Council of

16   California.  Cal. Standards Jud. Admin. § 5.  From the court's

17   research, CALJIC 5.56 was revised in 2004 in response to People

18   v. Quach, 116 Cal.App.4th 294, 301 (2004), which case and

19   revision occurred after Ward's conviction of corporal injury.

20   The court rules that Attorney General Lockyer owed no duty to

21   Ward to revise CALJIC 5.56 because, as noted, the CALJIC

22   instructions are not drafted by the Attorney General.

23   Furthermore, nothing prevented Ward's counsel, defendant Glennon,

24   from arguing that CALJIC 5.56, as in effect during Ward's trial,

25

26

1    was in error or incomplete.[7]

2        Therefore, the allegations against defendant Lockyer based

3    on CALJIC No. 5.56 are dismissed with prejudice and without leave

4    to amend.

5        To the extent that the FAC alleges that Lockyer "developed

6    and maintained policies or customs of the Kern County Sheriff's

7    Department, and Superior Court of California exhibiting

8    deliberate indifference to the Constitutional rights of the

9    Plaintiffs to be free from false imprisonment and loss of

10   consortium without due process of law" and that Lockyer "failed

11   to properly train officers, or employees ... as to their legal

12   duties to not violate Plaintiffs' Constitutional right to be free

13   from arrest for self defense and without due process of law", the

14   court concludes that these allegations are barred by Heck v.

15   Humphrey and the Rooker-Feldman doctrine to the extent that these

16   allegations pertain to the criminal proceedings against

17   plaintiffs for which plaintiffs were convicted or pleaded guilty

18   and which convictions have not been overturned.  Consequently, to

19   this extent, these allegations against defendant Lockyer are

20   dismissed.

21       Consequently, these allegations against defendant Lockyer

22   are dismissed.

23       F.   Motion to Dismiss by Defendant Bryan Hefner.

24       The FAC sues California Highway Patrol Officer Bryan Hefner

25   _____

26       [7]In so ruling, the court is expressing no opinion whether the
     giving of CALJIC 5.56, as in effect during Ward's trial, was error.

1  in his his individual capacity.  The FAC alleges in pertinent

2  part:

3      158.  On January 3, 2004 ... defendant HEFNER
       made a routine stop of Mr. Ward's vehicle for

4      an expired registration tag.  A temporary
       moving permit for the vehicle was in his

5      possession but his insurance card was
       expired.

6
       159.  Defendant HEFNER issued Mr. Ward a

7      citation for no proof of insurance and stated
       he was going to impound his vehicle.  Before

8      a tow truck arrived, Mr. Ward unloaded his
       personal property from his vehicle to a

9      parking lot.  Defendant HEFNER granted Mr.
       Ward permission to go make a phone call.  Mr.

10     Ward sought to have current paperwork brought
       in order to avoid having his vehicle

11     impounded.  He left his drivers license in
       possession of defendant HEFNER and walked

12     about a block to a liquor store.

13     160.  During that time, defendant NEWELL [of
       the Kern County Sheriff's Department] arrived

14     at the location of defendant HEFNER.  Upon
       discovery that Mr. Ward had been pulled over,

15     defendant NEWELL conspired with defendant
       HEFNER to arrest Mr. Ward in retaliation for

16     testifying against two KCSD officers
       [defendants of this action].  Subsequently,

17     defendant HEFNER transferred possession of
       Mr. Ward's drivers' [sic] license to

18     defendant NEWELL.  In no way did Mr. Ward
       consent to defendants' said actions.

19
       161.  Mr. Ward's first contact with defendant

20     NEWELL was at the time he left the store,
       defendant NEWELL used Mr. Ward's license to

21     identify him.  He exited his vehicle saying
       in a nasty voice, 'Why did you lie to that

22     CHP officer?' he pointed to the license and
       stated, 'You don't live at this address, you

23     live up [Residence Street]', Mr. Ward denied
       the allegation and walked back to his

24     vehicle, which was now loaded onto the bed of
       a tow truck.  Defendant NEWELL rejoined with

25     defendant HEFNER and instructed the tow truck
       to unload Mr. Ward's vehicle in order that he

26     could search it.

53

162.  Without warrant, legal, or probable cause, defendant NEWELL and HEFNER conducted a search of Mr. Ward's vehicle and his person.  Thereafter, Mr. Ward's vehicle was seized.  At no time did Mr. Ward consent to the defendants search and seizure, and no drugs or anything illegal was found.

163.  Defendant HEFNER asked Mr. Ward if he had lied about his residence address.  Mr. Ward denied the allegation and explained that he was the owner of more than one residence, and the address listed on his driver's license was his main residence.  Defendant NEWELL in a loud, angry voice stated, '*you're a liar*' and '*I don't like liars*'.  Defendant HEFNER in an angry voice said '*I'm driving up to that address tomorrow, and if your* [sic] *not there I'm arresting you.*'

164.  While Mr. Ward was in a highly emotional state induced by the events described herein above, defendant NEWELL ordered Mr. Ward away from defendant EVERETT [sic] to check his pulse rat e, and then alleged that Mr. Ward was under the influence of a CNS Stimulant because his pulse rate was elevated.

165.  By reason of the actions of defendants NEWELL and EVERETT [sic] hereinabove described the defendants intentionally and knowingly induced an emotional state in Mr. Ward, which caused his pulse rate to elevate, and defendant NEWELL used said pulse rate for his evaluation of drug use.

166.  Without warrant, legal, or probable cause, defendant NEWELL arrested Mr. Ward for violation of H & SC § 11550(a) being under the influence of a controlled substance.

...

170.  Defendant NEWELL submitted a false incident report to the Kern County Criminal Justice system, wherein defendant knowingly omitted from his official report and otherwise failed to reveal that he and defendant HEFNER caused Mr. Ward to have an elevated pulse rate, in order to falsely

1                infer Mr. Ward was in violation of H&SC §
                  11550(a).

2

                  ...

3

                  173.  Defendant NEWELL and HEFNER have

4                willfully failed and refused to inform any
                  other person or governmental entity, by

5                official report or otherwise, of the true and
                  complete facts of the arrest of Mr. Ward on

6                January 3, 2004.

7 The FAC further alleges that plaintiff pleaded guilty to

8 possession of paraphernalia, that his motion to withdraw that

9 guilty plea has been denied, and that his petition for writ of

10 mandate to compel the Clerk's Office to process his appeal from

11 the denial of his motion to withdraw his guilty plea has been

12 denied.  Count Five of the FAC is alleged by plaintiff Drake Ward

13 against defendants Newell, Patterson, Quinlen, Hefner and the

14 County of Kern for false arrest and illegal search and seizure in

15 violation of 42 U.S.C. § 1983.

16    Defendant Hefner moves to dismiss the allegations in the FAC

17 against him pursuant to <u>Heck v. Humphrey</u>, <u>supra</u>.

18    To the extent that the FAC alleges that Hefner participated

19 in an unlawful arrest of plaintiff leading to his guilty plea to

20 the charges for which he was arrested, the FAC is dismissed

21 against him pursuant to <u>Heck</u>.

22    However, as discussed above, the court concludes that

23 defendant Hefner is not entitled to dismissal of the claim that

24 defendants Newell and Hefner unlawfully searched Ward's vehicle

25 and person.  Because of the allegation in the FAC that no

26 evidence was seized pursuant to the search of plaintiff's vehicle

1  and person, plaintiff's Section 1983 claim based on this

2  allegedly unlawful search will not invalidate plaintiff's

3  subsequent conviction.   Therefore, this claim is not barred by

4  Heck v. Humphrey.

5      ACCORDINGLY:

6      1.   The Motion to Dismiss filed by defendants Judge John I.

7  Quinlen, Judge Catherine D. Purcell, Sherrie Leonard and Susan

8  Hogue (Yeargan) is granted.   This action is dismissed without

9  leave to amend as against these defendants.   This action is

10 dismissed without leave to amend against John Does Five through

11 Nine.

12     2.   The Motion to Dismiss filed by Defendant Bill Lockyer is

13 granted in part and denied in part.

14     3.   The Motion to Dismiss filed by defendants Mack Wimbish,

15 Mark Arnold, Edward Jagels, David Boyd, Sam Smith, John Nobles,

16 James Newell, Pamela Belmore, Perry Patterson, Patrick Glennon,

17 Jason Belasis, and the County of Kern is granted in part and

18 denied in part.

19     4.   The Motion to Dismiss filed by defendant Bryan Hefner is

20 granted in part and denied in part.

21     5.   Plaintiffs shall file a Second Amended Complaint in

22 accordance with the rulings set forth herein within 30 days of

23 the filing date of this Order.   Failure to timely comply will

24 result in the dismissal of this action.

25 IT IS SO ORDERED.

26 **Dated:  May 18, 2005**                    **/s/ Robert E. Coyle**

668554                                        UNITED STATES DISTRICT JUDGE